IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| Linda Trimnal, | ) | Case No: |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | (Jury Trial Demanded) |
| | ) | |
| Ortho Pros Express, Inc., Atlantic Coast | ) | |
| Orthopaedic Medical Supplies, Inc., | ) | |
| Atlantic Coast Resources, Inc., and | ) | |
| Stuart Ross, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Plaintiff, Linda Trimnal, complaining of the Defendants above-named, would respectfully show unto the Honorable Court as follows:

**PARTIES, JURISDICTION AND VENUE**

1. The Plaintiff, Linda Trimnal ("Trimnal" or "Plaintiff") is a resident of York County, South Carolina.

2. On information and belief, the Defendant Stuart Ross ("Ross") is a resident of Mecklenburg County, North Carolina. On further information and belief, the Defendants Ortho Pros Express, Inc. ("OPE"), Atlantic Coast Orthopaedic Medical Supplies, Inc. ("ACO"), Atlantic Coast Resources, Inc. ("ACOR") are corporations organized and existing under the laws of the State of North Carolina, licensed and doing business in Mecklenburg County, North Carolina. Ross, OPE, ACO, and ACOR (collectively referred to herein as "Defendants"), are in the business of selling, supplying and distributing medical supplies. At all times relevant to this Complaint, the Defendants employed more than 15 employees at its Charlotte facility. At all times pertinent, Plaintiff was employed by the Defendants at its location in Charlotte, N.C.

3. Alternatively, Plaintiff submits that ACO, OPE, and ACOR are integrated employers and the employees for each should be aggregated to meet the threshold requirement of 15 employees under Title VII. The Defendants are involved in a common enterprise, operate in the same building, share a single employee handbook, and share employees, resources and space.

4. The unlawful employment practices complained of in this Complaint occurred in Mecklenburg County, North Carolina. Venue is therefore proper within this Court. This Court has jurisdiction over this claim and all parties to this action.

## FACTUAL BACKGROUND

5. In October 2002, Trimnal was recruited and hired by the Defendants to serve as OPE's Vice President of Operations. By accepting this position, it was understood that Trimnal would be replacing two individual employees.

6. As her resume reflects, Trimnal is an accomplished and experienced operations executive, who has worked in the medical supply industry for over 28 years. Throughout her tenure of employment with Defendants, and her previous employers, Trimnal's performance always met or exceeded employer expectations.

7. Despite her solid work history, Trimnal, the only female executive, was repeatedly targeted for intentional discrimination on the basis of her sex by the Defendants, and eventually forced to resign. Specifically, and without limitation, Trimnal was denied bonuses, to which she was entitled and which her male counter-parts received; she was repeatedly denied salary increases that her male counter-parts were provided; and she was harshly micro-managed and intimidated from even taking lunch breaks, for fear of reprisal. Trimnal was repeatedly subjected to derogatory comments, in front of others in the office—which none of her male

counter-parts experienced. Finally, and what is most disturbing, Trimnal was required by the Defendants to undergo individual "psychological" treatment sessions to deal with what Defendants' labeled her "problematic leadership style." None of the male executives were required to participate in such "treatment sessions."

8. Trimnal is informed and believes that her performance was comparable if not better than the other male executives in similar positions—yet she was treated far differently. On information and belief, from 2004 to 2008, under the direction of Linda Trimnal, OPE more than doubled its total revenues and accomplished a near 100% increase in gross profit. Yet, not only did Trimnal not receive a salary increase, her annual salary actually decreased. Furthermore, the bonuses that Trimnal did receive were grossly disproportionate to the bonuses her male counterparts received, whose revenue production was far less.

9. Trimnal was constructively discharged and intentionally forced out by Stuart Ross, President and Owner of the Defendants. When Trimnal started employment with Defendants, she advised that she would be working through the age 65. After years of the disparate treatment at the hands of Stuart Ross, she grew weakened, frustrated and unable to deal with the outrageous and discriminatory conduct. Trimnal repeatedly expressed her concerns of discrimination to the "doctor" hired by Defendants to provide Trimnal's individualized "psychological counseling", however, nothing was done. Rather, the "doctor" merely advised Trimnal how to accommodate the stressful and discriminatory conduct and provided "behavioral modification tips" she could use to better "handle" her relationship with Stuart Ross. When Trimnal couldn't get help, she advised the Defendants Human Resources Supervisor (Stuart Ross's wife) of her condition and that Trimnal was fearful that she couldn't take the harassment long enough to reach her retirement.. When the Human Resources Supervisor (Mrs. Ross)

communicated Trimnal's concerns to Mr. Ross, his harassment only increased in frequency and magnitude.

10. The conduct by Stuart Ross was extreme and outrageous and beyond that which a normal person could or should be expected to endure.

11. In addition to the discrimination charge, Trimnal was denied payment of her earned and accrued vacation/PTO time. Specifically, Trimnal's and the Defendants' records show Trimnal is owed 140 hours ($6730.77) of PTO time. Trimnal made repeated requests for payment of the PTO time, however such requests were denied outright and Trimnal was slandered and falsely accused of fraud and "improper record-keeping."

## PROCEDURAL BACKGROUND

12. Before her discharge, Ms. Trimnal filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) asserting a continuing violation against Defendants for discrimination on the basis of sex, sexual harassment and retaliation. Plaintiff requested that a right to sue notice be issued from EEOC. The EEOC issued its right to sue notice less than 90 days before the filing of this action.

### FOR A FIRST CAUSE OF ACTION
**Violation of Title VII – Sexual Discrimination**
**Disparate Treatment**
**Hostile Work Environment**
**Retaliation**
**Violation of NC Human Affairs Laws**

13. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs, to the extent not inconsistent herewith.

14. Plaintiff was wrongfully terminated by Defendants. At all times relevant, Plaintiff was qualified and able to perform her job responsibilities and was in fact performing her job responsibilities satisfactorily.

15. On information and belief, other male employees who were similarly situated as the Plaintiff in terms of position and job performance were treated more favorably than the Plaintiff.

16. Plaintiff is informed and believes that her sex was a motivating, intentional and/or decisive factor in the Defendants' decision to terminate and/or constructively discharge Plaintiff.

17. Title VII prohibits severe and pervasively offensive conduct in the workplace, including sexual harassment and other derogatory comments based on sex. Defendant allowed its supervisors and other employees to make such unwelcome and offensive comments, and said comments were severe and pervasive. Defendant failed to prevent and correct such unlawful conduct, thereby creating a hostile working environment.

18. Title VII further prohibits Employers from retaliating against employees who report sexual harassment/discrimination. Plaintiff reported serious concerns about sexual harassment and discriminatory conduct on the basis of sex. Defendant failed and refused to address the problems, and instead, terminated and/or constructively discharged Plaintiff in retaliation for voicing such concerns.

19. Based upon and due to the foregoing, Plaintiff submits that Defendant violated and/or willfully violated Title VII and the North Carolina Human Affairs Laws and is liable to Plaintiff for actual damages including back pay and front pay; attorneys' fees; and for such other relief as provided by law..

**FOR A SECOND CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

20. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs, to the extent not inconsistent herewith.

21.     Under North Carolina law, there is implied in every contract a covenant of good faith and fair dealing. Such a covenant arose in the employment contract between Plaintiff and Defendants.

22.     Defendants breached the implied covenant of good faith and fair dealing by terminating and/or constructively discharging Plaintiff's employment in disregard of Defendants' own policies and procedures, including the procedures and policies contained in its Employee Handbook.

23.     Defendants' breach of the implied covenant of good faith and fair dealing has caused Plaintiff to suffer substantial damages.

24.     Upon information and belief, Plaintiff is entitled to recover in this action actual and other damages from Defendants in an amount to be determined by the trier of fact.

25.     The amount of unpaid wages due Plaintiff is a sum certain or is an amount that is capable of being reduced to certainty. Upon information and belief, Plaintiff is therefore entitled to recover prejudgment interest on the amount of unpaid wages and commissions owed by Defendants, from the time the payment was demandable until the date of the judgment in this matter.

**FOR A THIRD CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress)**

26.     Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs, to the extent not inconsistent herewith.

27.     Defendants intentionally or recklessly inflicted severe emotional distress upon the Plaintiff, or were certain or substantially certain that such distress would result from their conduct.

28. The conduct of the Defendants was so extreme and outrageous as to exceed all possible boundaries of decency. Defendants acted recklessly, willfully and maliciously as to their termination of the Plaintiff and such conduct must be regarded as atrocious and utterly intolerable.

29. As a direct and proximate result of the Defendants' conduct, Plaintiff suffered severe emotional distress that no reasonable person could be expected to endure.

30. Wherefore, Plaintiff is entitled to a judgment against the Defendants for actual and punitive damages in such sums as shall be determined at trial; attorney's fees and costs; and such further relief as the Court deems just and proper.

## FOR A FOURTH CAUSE OF ACTION
### (Violation of Public Policy and Breach of Employee Handbook)

31. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs, to the extent not inconsistent herewith.

32. North Carolina's public policy prohibits employers from discriminating against employees on the basis of sex.

33. Pursuant to Defendants' collective employee handbook, Defendants promised to treat each employee in a fair, non-discriminatory manner and to refrain from any form of harassment. Defendants violated the public policy of the State of North Carolina and violated their own Company policies by harassing and discriminating against the Plaintiff on the basis of her sex.

34. Based upon and due to the foregoing, Defendant's termination of the Plaintiff was improper and Defendant is liable to the Plaintiff for such damages as shall be shown at trial.

## FOR A FIFTH CAUSE OF ACTION
### (Violation of the North Carolina Wage and Hour Act)

35. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs, to the extent not inconsistent herewith.

36. Defendants are "employers" as defined by the North Carolina Wage and Hour Act, N.C.G.S. §95-21 et seq. (the "Wage Act").

37. Defendants employed Plaintiff within the State of North Carolina.

38. Defendants owe Plaintiff "wages" as defined in the Wage Act.

39. Despite Plaintiff's repeated demands, Defendants have failed and refused to pay Plaintiff all wages due, as required by the Wage Act.

40. On information and belief, Defendants' failure to pay Plaintiff all wages due is willful, without justification, and in violation of the duty of good faith and fair dealing.

41. Based upon and due to the foregoing, and pursuant to section N.C.G.S. §95-25.22 of the Act, Plaintiff is entitled to recover in this action an amount equal to two times the full amount of his unpaid wages, plus costs and reasonable attorney's fees.

## FOR A SIXTH CAUSE OF ACTION
### (Breach of Contract)

42. The Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs, to the extent not inconsistent herewith.

43. Plaintiff had a contract of employment with Defendants to provide employment services in exchange for salary and other compensation.

44. Plaintiff fully performed all of her obligations under the Employment Contract and complied with all terms and conditions of the contract.

45. Defendants breached the employment contract with Plaintiff by failing and refusing to pay Plaintiff the full amount of compensation he earned pursuant to the Contract.

46. Defendants' breach of contract has caused Plaintiff to suffer substantial damages in the form of unpaid wages and other compensation.

47. Plaintiff is entitled to recover in this action actual damages from Defendants for the amount of unpaid wages, and lost compensation pursuant to the employment contract.

48. Furthermore, the amount of unpaid wages and lost compensation due to Plaintiff is a sum certain or is an amount that is capable of being reduced to a certainty. Upon information and belief, Plaintiff is therefore entitled to recover prejudgment interest on the amount of unpaid wages and bonuses owed by Defendants, from the time the payment was due until the date of the judgment in this matter.

## FOR A SEVENTH CAUSE OF ACTION
**(Defamation)**

49. The Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs, to the extent not inconsistent herewith.

50. Defendants have falsely accused Plaintiff of dishonesty and fraudulent behavior concerning the maintenance of company records, specifically but not limited to her personal PTO records. Such allegations are completely false, and were published to third parties (specifically but not limited to non-qualified employees and former employees of Defendants.) Plaintiff's records and payment stubs from Defendants show that the Plaintiff was owed the PTO time she claimed and evidence the fact that the Defendants knew its' statements were false and for the sole purpose of intending harm to the Plaintiff.

51. The false allegations caused significant injury to the Plaintiff's reputation, thereby entitling her to damages in an amount to be determined by the trier of fact.

Wherefore, Plaintiff prays for a judgment against Defendants for actual and punitive damages in an amount to be determined by a jury, for reasonable attorney's fees and the costs of this action, and for such other and further relief as this Court may deem just and proper.

July 22, 2010

        s/Tracy T. Vann
        Tracy T. Vann (NC Bar No.: 34897)
        HAMILTON MARTENS & BALLOU, LLC
        Post Office Box 10940
        Rock Hill, South Carolina 29731
        Phone: 803/329-7672
        Fax: 803/329-7678
        ATTORNEYS FOR PLAINTIFF

ND: 4850-3152-2307, v. 1    10
Case 3:10-cv-00334-RJC-DSC   Document 1   Filed 07/22/10   Page 10 of 10